IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

EDWARD D. SNELL,                          :
                                          :
                          Plaintiff,      :
                                          :   Civil No. 4:06-cv-2133
             v.                           :
                                          :   Judge John E. Jones III
SERGEANT RONALD CAMACHO                   :
*York Police Department, in his*          :
*individual capacity*                     :
                                          :
                          Defendant       :

## MEMORANDUM

### October 23, 2007

Plaintiff Edward Snell filed this § 1983 action against Defendant Sergeant

Roland Camacho[1], as well as the City of York and York's mayor and police

commissioner.  Snell alleges violations of his constitutional rights of free exercise of

religion, speech, and assembly as well as claims of unlawful arrest and excessive

force.  By an order of May 10, 2007, the Court dismissed Snell's claims against

York, the mayor, the police commissioner, and Sergeant Camacho in his official

capacity.  (Doc. 24.)  Currently before the Court is Sergeant Camacho's motion for

summary judgment on Snell's claims against him in his individual capacity.  (Doc.

_____

[1] The defendant was misnamed in the complaint and caption as "Ronald."  *See* Def.'s Answer
(Doc. 28) at 1.

33.)  For the reasons set for below, the Court will the motion.

## I.    BACKGROUND

The following facts are derived from the complaint and the briefs, exhibits, and other evidence submitted by the parties in support of and opposition to the current motion.  These facts, and any reasonable inferences drawn therefrom, are viewed in the light most favorable to the non-moving party, Snell.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

Plaintiff Edward Snell is a Christian, pro-life advocate who has traveled to the Planned Parenthood of Central Pennsylvania facility in the City of York to state his beliefs regarding abortion approximately one day a week since October 1999. (Def.'s Statement of Undisputed Material Facts ["SUF"] ¶ 18; Pl.'s Statement in Opposition ["SIO"] ¶ 18; Snell Aff. ¶¶ 3-4.)  These actions are motivated by Snell's sincerely held religious beliefs.  (Snell Aff. ¶ 7.)

The Planned Parenthood facility is located on South Beaver Street in York between Hancock Street and Rose Alley.  (SUF, SIO ¶¶ 18, 19-20; Snell Aff. ¶ 5.) Planned Parenthood's parking lot is located across Rose Alley from the facility. (Snell Dep. at 16, Ex. 1.)  Public sidewalks are located in front of the facility along Beaver Street and along the side of the facility from the parking lot to Beaver Street. (SUF, SIO ¶ 21; Snell Dep. at 16-17, Ex. 1.)  Rose Alley is a narrow alleyway that

is subject to two-way vehicular traffic.  (SUF, SIO ¶ 20, 23; Snell Dep. at 19, 23.)

In addition to vehicles accessing the Planned Parenthood parking lot, Rose Alley is

also subject to traffic going to and from a printing business located further down

the alley, including tractor-trailer trucks.  (SUF, SIO ¶ 22.)  There are no signs

restricting the direction of travel, the size of vehicles using the alley, or the hours

during which vehicles may use the alley.  (SUF, SIO ¶ 23.)

When patrons park in the Planned Parenthood parking lot, they cross Rose

Alley to enter the Planned Parenthood facility.  (SUF, SIO ¶¶ 5-6; Snell Dep. at

26.)  Patrons are escorted from the parking lot to the main entrance of the facility

by escorts who are Planned Parenthood personnel or volunteers.  (*Id.*)

Businesses in and around the City of York contract with and pay the City to

have off-duty police officers work overtime details at their facilities.  (SUF, SIO ¶

2.)  Planned Parenthood has such a contract with the City.  (SUF, SIO ¶¶ 2-3.)

Sergeant Camacho was assigned to the overtime detail at the Planned Parenthood

facility on November 3, 2004.  (SUF, SIO ¶ 3.)  This was the second time that

Sergeant Camacho had worked the overtime detail at the Planned Parenthood

facility.  (SUF, SIO ¶ 4.)  Prior to working the November 3 detail at the Planned

Parenthood facility, Sergeant Camacho consulted with an Assistant District

Attorney for legal advice with respect to situations which may arise on the detail.

(SUF, SIO ¶ 9.)  The Assistant District Attorney advised Sergeant Camacho that he would be legally justified in making an arrest for disorderly conduct if an individual bumped, impeded, or blocked someone from crossing Rose Alley. (SUF, SIO ¶ 10.)

On November 3, 2004, Snell traveled to the Planned Parenthood facility to state his beliefs regarding abortion.  (Snell Aff. ¶ 10.)  When Snell arrived at the facility, Sergeant Camacho advised him and another pro-life advocate to stay out of Rose Alley.[2]  (Snell Aff. ¶ 11; Snell Dep. at 28-29.)  Sergeant Camacho did not otherwise restrict Snell or any other pro-life advocate from making comments, distributing literature or displaying signs, nor did Sergeant Camacho restrict Snell or any other pro-life advocate from engaging in any activities on any of the public sidewalks surrounding the Planned Parenthood facility.  (SUF, SIO ¶ 24.)  Prior to this date, Snell had been instructed by another officer that he was not allowed to

---

[2]  In his affidavit, Snell states that "[t]his command was directed only at Christian, pro-life counselors."  (Snell Aff. ¶ 11.)  During his deposition, however, Snell was specifically asked  who was present when Sergeant Camacho gave his instruction to stay out of Rose Alley.  Snell named four other pro-life advocates and then stated "[t]here were, of course, Planned Parenthood personnel there" and identified three Planned Parenthood employees and "a couple other escorts" who were present when Sergeant Camacho gave his instruction.  (Snell Dep. at 28-30.)  Further, Snell does not recall any Planned Parenthood personnel standing or lingering in Rose Alley on November 3, 2004.  (SUF, SIO ¶¶ 11, 25; Snell Dep. at 26-28.)  Given his deposition testimony to the contrary, the Court cannot accept Snell's unsupported allegation that Sergeant Camacho's instruction was directed only at pro-life advocates.  *Hackman v. Valley Fair*, 932 F.2d 239, 241 (3d Cir. 1991) ("When, without a satisfactory explanation, a nonmovant's affidavit contradicts earlier deposition testimony, the district court may disregard the affidavit in determining whether a genuine issue of material fact exists.").

stand, linger, or remain in Rose Alley.  (SUF, SIO ¶ 19.)  In an April 2000 criminal

proceeding which arose from an incident at the Planned Parenthood facility, Snell

had also been warned by a District Justice that there was to be no physical contact

between pro-life advocates and Planned Parenthood patrons or personnel.  (SUF,

SIO ¶ 26.)

When the first Planned Parenthood patron arrived on November 3, 2004, she

parked in the parking lot, was met by escorts, and together they proceeded to walk

across Rose Alley toward the Planned Parenthood facility.  (SUF, SIO ¶¶ 5-6.)  As

the patron and escorts were in the middle of the alley, Snell moved into the alley

and attempted to hand literature to the patron.  (SUF, SIO ¶¶ 7, 27.)  Sergeant

Camacho perceived some physical contact between Snell and the individuals

attempting to cross the alley.  (*Id.*)  Sergeant Camacho advised Snell that he was

not to be in the alley or impede or make physical contact with individuals

attempting to cross the alley and that, if he did so, he would be arrested.  (SUF,

SIO ¶¶ 8, 12, 30.)

Later on November 3, 2004, a second patron arrived at the Planned

Parenthood facility.  (SUF, SIO ¶¶ 13, 31; Snell Dep. at 40-41.)  Snell again moved

into Rose Alley to distribute literature or say something to the patron.  (*Id.*)

Sergeant Camacho then arrested Snell.  (SUF, SIO ¶¶ 14, 31.)  Sergeant Camacho

directed Snell to place his hands behind his back, and after Snell complied, placed handcuffs on him.  (SUF, SIO ¶ 14.)  Sergeant Camacho contacted another officer to come to the facility and transport Snell to the police department.  (SUF, SIO ¶ 15.)  When Officer Hernandez arrived, Sergeant Camacho removed his handcuffs from Snell, and Officer Hernandez placed his handcuffs on Snell "very, very tight." (SUF, SIO ¶ 33; Snell Dep. at 45.)  Snell made no complaint to Sergeant Camacho that the handcuffs were on too tight or that he had sustained any injury during the arrest.  (SUF, SIO ¶ 32.)  At the end of his overtime detail, Sergeant Camacho went to the police station and issued Snell a summary citation for disorderly conduct and released him.  (SUF, SIO ¶ 15.)

An Assistant District Attorney prosecuted the disorderly conduct charge against Snell and, at no time, indicated that the charge was inappropriate or unsupported by probable cause.  (SUF, SIO ¶ 37.)  At a December 13, 2004 hearing, District Justice Haskell dismissed the summary citation against Snell. (SUF, SIO ¶ 16.)  District Justice Haskell indicated on the record, however, that he did not fault anything Sergeant Camacho did, that he would also have warned Snell after the first incident, and that Snell was "right at the line" of committing disorderly conduct.  (SUF, SIO ¶ 17; Tr. of Proceedings of Preliminary Hearing, Dec. 13, 2004 at 55-57.)

## II.    STANDARD OF REVIEW

Summary judgment is appropriate if the record establishes "that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).  Initially, the moving party bears the burden of demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  The movant meets this burden by pointing to an absence of evidence supporting an essential element as to which the non-moving party will bear the burden of proof at trial.  *Id.* at 325.  Once the moving party meets its burden, the burden then shifts to the non-moving party to show that there is a genuine issue for trial. Fed. R. Civ. P. 56(e).   An issue is "genuine" only if there is a sufficient evidentiary basis for a reasonable jury to find for the non-moving party, and a factual dispute is "material" only if it might affect the outcome of the action under the governing law.  *Anderson*, 477 U.S. at 248-49.

In opposing summary judgment, the non-moving party "may not rest upon the mere allegations or denials of the adverse party's pleadings, but ... must set forth specific facts showing that there is a genuine issue for trial."  Fed. R. Civ. P. 56(e).  The non-moving party "cannot rely on unsupported allegations, but must go beyond pleadings and provide some evidence that would show that there exists a genuine issue for trial."  *Jones v. UPS*, 214 F.3d 402, 407 (3d Cir. 2000).

Arguments made in briefs "are not evidence and cannot by themselves create a factual dispute sufficient to defeat a summary judgment motion." *Jersey Cent. Power & Light Co. v. Twp. of Lacey*, 772 F.2d 1103, 1109-10 (3d Cir. 1985). However, the underlying facts and all reasonable inferences therefrom must be viewed in the light most favorable to the non-moving party. *P.N. v. Clementon Bd. of Educ.*, 442 F.3d 848, 852 (3d Cir. 2006).

Summary judgment should not be granted when there is a disagreement about the facts or the proper inferences that a fact-finder could draw from them. *Peterson v. Lehigh Valley Dist. Council*, 676 F.2d 81, 84 (3d Cir. 1982). Still, "the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; there must be a *genuine* issue of *material* fact to preclude summary judgment." *Anderson*, 477 U.S. 242, 247-48 (1986).

## III.   DISCUSSION

Snell brings this action pursuant to 42 U.S.C. § 1983. Section 1983 is not itself a source of substantive rights, but a means of redress for violations of federal rights elsewhere conferred. *Graham v. Connor*, 490 U.S. 386, 393-94 (1989). Snell alleges that Sergeant Camacho violated his First Amendment rights of free exercise of religion, speech, and assembly. Snell also alleges that Sergeant

Camacho arrested him without probable cause and used excessive force during the arrest. Snell seeks a declaratory judgment, nominal and compensatory damages, injunctive relief, and punitive damages. Sergeant Camacho disputes the merits of these claims and raises the defense of qualified immunity. The Court will address each of these issues in turn.

### A.    Free Exercise of Religion

Snell first argues that Sergeant Camacho's directive not to enter Rose Alley and his subsequent arrest of Snell violates his First Amendment right to the free exercise of religion. The Free Exercise Clause of the First Amendment, which is applicable to state action pursuant to the Fourteenth Amendment, *Cantwell v. Connecticut*, 310 U.S. 296, 303 (1940), provides that "Congress shall make no law ... prohibiting the free exercise [of religion]." The Free Exercise Clause forbids any regulation of religious beliefs as such. *Blackhawk v. Pennsylvania*, 381 F.3d 202, 209 (3d Cir. 2004) (citing *Church of Lukumi Babalu Aye, Inc. v. City of Hialeah*, 508 U.S. 520, 533 (1993) and *Employment Div., Dep't of Human Resources of Or. v. Smith*, 494 U.S. 872, 877 (1989)).

The free exercise of religion, however, often includes not only belief but also religiously motivated conduct. *Smith*, 494 U.S. at 877. In this case, Snell's actions at the Planned Parenthood facility are motivated by sincerely-held religious beliefs.

When religiously motivated conduct comes into conflict with a law or government action, the analysis of a free exercise claim depends on the nature of the challenged law or government action. *Tenafly Eruv Ass'n, Inc. v. Borough of Tenafly*, 309 F.3d 144, 165 (3d Cir. 2002).

If government action is "neutral" and "generally applicable," and burdens religious conduct only incidentally, the Free Exercise Clause offers no protection. *Blackhawk*, 381 F.3d at 209; *Tenafly*, 309 F.3d at 165.  On the other hand, if government action is not neutral and generally applicable, strict scrutiny applies, and the government action violates the Free Exercise Clause unless it is narrowly tailored to advance a compelling government interest. *Id.*  Government action is not neutral and not generally applicable if it burdens religious conduct because of its religious motivation or if it burdens religiously motivated conduct but exempts substantial comparable conduct that is not religiously motivated. *Church of the Lukumi Babalu Aye*, 508 U.S. at 533; *Blackhawk*, 381 F.3d at 209; *Tenafly*, 309 F.3d at 165.

In this case, Sergeant Camacho's directive not to enter Rose Alley was neutral and generally applicable.  No evidence indicates that Sergeant Camacho prohibited entering the alley because of Snell's religious beliefs.  Sergeant Camacho gave his directive in the presence of both pro-life protestors and Planned

10

Parenthood personnel.  Although Planned Parenthood patrons and escorts were allowed to cross Rose Alley to move from the parking lot to the facility (the only means of entering the building), Sergeant Camacho did not observe nor allow any Planned Parenthood personnel to linger in the alley.   Further, Sergeant Camacho's directive only incidentally burdened Snell's conduct.  The Planned Parenthood facility is bordered by public sidewalks in which Snell was free to engage in his religious conduct.  Sergeant Camacho did not prohibit or prevent Snell or any member of his group from carrying signs, distributing literature, expressing their views, or otherwise engaging in religiously motivated conduct on these sidewalks or in any location other than the alley.  Snell retained substantial opportunity to engage in his religiously motivated conduct.  Because Sergeant Camacho's directive was neutral and generally applicable, and burdened Snell's religious conduct only incidentally, Sergeant Camacho is entitled to summary judgment on Snell's free exercise claim.  *Tenafly*, 309 F.3d at165.

Snell argues that strict scrutiny applies, regardless of whether Sergeant Camacho's actions were neutral and generally applicable, because he has combined his free exercise claim with other First Amendment claims, namely speech and assembly.  (Pl.'s Opp. at 14.)  The Supreme Court in dictum in *Smith* suggested that strict scrutiny may still apply to neutral and generally applicable government

11

action that implicates not only the Free Exercise Clause but also other constitutional protections.  494 U.S. at 881.  Questions about the existence and application of such a "hybrid rights" exception have created varying interpretations across federal courts.  *See Green v. City of Philadelphia*, C.A. No. 03-1476, 2004 WL 1170531 at *5-7 (E.D. Pa. May 26, 2004) (collecting cases).  The Third Circuit has not definitively adopted or rejected a hybrid rights exception, but has suggested that such a claim exists.  *Blackhawk*, 381 F.3d at 207 (stating that in *Smith* the Supreme Court recognized and "did not overrule prior decisions in which 'hybrid claims' ... had prevailed against neutral, generally applicable laws"); *Tenafly*, 309 F.3d at 165 n.26 (stating "[s]trict scrutiny may also apply when a neutral, generally applicable law incidentally burdens rights protected by the Free Exercise Clause in conjunction with other constitutional protections, such as freedom of speech and of the press, or the rights of parents ... to direct the education of their children," but finding no such claim at issue). Because the Third Circuit has recognized at least the possibility of a hybrid rights claim, the Court will address the merits of such a claim in this case.

As an initial matter, even those courts that have explicitly recognized a hybrid rights claim require a "colorable showing of infringement of recognized and

specific constitutional rights" to trigger strict scrutiny.[3]  *See, e.g.*, *Miller v. Reed*, 176 F.3d 1202, 1207-08 (9th Cir. 1999); *Swanson ex rel. Swanson v. Guthrie Indep. Sch. Dist.*, 135 F.3d 694, 700 (10th Cir. 1998); *see also Green*, 2004 WL 1170531 at *6 (collecting cases).  Because, as set forth below, Snell has not made out colorable claims for violation of his rights to free speech and assembly, any hybrid rights claim must also fail.  *See Lighthouse Inst. for Evangelism Inc. v. City of Long Branch*, 100 Fed. Appx. 70, 75 (3d Cir. 2004) (affirming denial of injunction on hybrid rights because plaintiffs were unable to show likelihood of success on other constitutional claims).

Further, should strict scrutiny apply, Sergeant Camacho's actions do not violate Snell's free exercise rights because they were narrowly tailored to serve a compelling government interest.  Sergeant Camacho gave his instructions regarding standing and lingering in the alley because of concerns about safety and the free flow of traffic to and from several businesses.  Snell, correctly, does not deny that these are compelling interests.  *See Schenck v. Pro-Choice Network Of W. N.Y.*, 519 U.S. 357, 375-76 (1997) (finding injunction supported by "the significant governmental interest in public safety"); *Madsen v. Women's Health Ctr., Inc.*, 512

---

[3]  In his opposition brief, Snell incorrectly attributes this quotation to the Supreme Court's decision in *Smith*.  (Pl.'s Opp. at 14.)  No such language appears in that decision.

U.S. 753, 768 (1994) (agreeing that the government "has a strong interest in

ensuring the public safety and order [and] in promoting the free flow of traffic on

public streets and sidewalks...").

Instead, Snell argues that Sergeant Camacho's asserted interests are mere

pretext.[4]  The evidence presented, however, does not support this allegation.  Snell

admits that the narrow alley is subject to two-way traffic, including large trucks,

coming to and from Planned Parenthood and a neighboring business.  (SUF, SIO

¶¶ 20, 22-23.)  In his deposition, Snell relates two separate incidents in which pro-

life advocates were nearly struck by vehicles in the alley.  (Snell Dep. at 65-68 and

68-70.)  Snell argues that the asserted interests are pretext because "a whole group

of Planned Parenthood personnel [were] able to use the alley."  (Pl.'s Opp. at 16.)

There is a difference, however, between patrons and employees crossing from the

parking lot to enter the Planned Parenthood facility, which presents little risk of

endangering safety and traffic flow, and Snell's lingering in the alley to distribute

literature and engage in conversation, which impedes the flow of pedestrian and

vehicular traffic through the alley and subjects Snell and others to the danger of

---

[4]  While Snell alleges that Sergeant Camacho's interests in safety and traffic flow are pretextual, he does not explicitly allege what the "true" reasons for Sergeant Camacho's actions were. Presumably, Snell means to argue that Sergeant Camacho was motivated by a desire to stifle his religious conduct or expression.  There is no evidence, however, to support any claim that Sergeant Camacho's actions were motivated by Snell's religious beliefs or the content of his expression.

being struck by cars or trucks.  Snell's argument is also unavailing because he, in

fact, does not recall any Planned Parenthood personnel being allowed to linger in

the alley on November 3, 2004.  (SUF, SIO ¶¶ 11, 25; Snell Dep. at 26-28.)  The

evidence clearly substantiates Sergeant Camacho's asserted interests in safety and

traffic flow, and Snell has submitted no evidence to support his allegation that these

asserted interests are pretext.

**B.      Free Speech and Assembly**

Snell also argues that Sergeant Camacho's directive not to stand or linger in

Rose Alley violates his First Amendment rights to free speech and assembly.[5]

"The Supreme Court has adopted a forum analysis as a means of determining when

the Government's interest in limiting the use of its property to its intended purpose

outweighs the interest of those wishing to use the property for other purposes."

*Paff v. Kaltenbach*, 204 F.3d 425, 431 (3d Cir. 2000) (citing *Cornelius v. NAACP*

---

[5] Snell states that he is not making an expressive association claim, *see Boy Scouts of America v. Dale*, 530 U.S. 640, 647-48 (2000) (explaining that implicit in the protections of the First Amendment is a right to associate with others for First Amendment purposes); rather, Snell asserts only his "right to physically assemble." (Pl.'s Opp. at 12.)  Because the rights of free speech and peaceful assembly are so closely related, the same analysis applies to both.  *See Perry Educ. Ass'n v. Perry Local Educators' Ass'n*, 460 U.S. 37, 45 (1983) (discussing forum analysis in terms of both speech and assembly); *Thomas v. Collins*, 323 U.S. 516, 530 (1945) (stating rights of speech and assembly, "though not identical, are inseparable. They are cognate rights"); *Walker-Serrano ex rel. Walker v. Leonard*, 168 F. Supp. 2d 332, 347 (M.D. Pa. 2001) (stating "the right to assemble is intertwined with the right to free speech").

*Legal Def. & Educ. Fund, Inc.*, 473 U.S. 788, 800 (1985)).  Under this analysis,

"[t]he extent to which the government may limit activity protected by the First

Amendment depends largely on the locale where the speech or conduct takes

place." *Int'l Soc'y for Krishna Consciousness, Inc. v. N.J. Sports & Exposition

Auth.*, 691 F.2d 155, 159 (3d Cir. 1982).

The Supreme Court has identified three types of fora:  the traditional public

forum, the designated public forum, and the nonpublic forum.  *Arkansas Educ.

Television Comm'n v. Forbes*, 523 U.S. 666, 677 (1998).  Traditional public fora

are defined by the objective characteristics of the property, such as whether the

location has long been open to expressive activity.  *Id.*  Designated public fora are

created only where the government intentionally opens a nontraditional public forum

for public discourse.  *Id.*  Other government properties are either nonpublic fora or

not fora at all.  *Id.*

In traditional and designated public fora, limits on First Amendment activity

are subject to strict scrutiny, meaning that to be constitutional such limits must be

content-neutral, be narrowly tailored to serve a significant government interest, and

leave open ample alternative channels for communication of information. *Ward v.

Rock Against Racism*, 491 U.S. 781, 791 (1989).   In contrast, limits on First

Amendment activity in nonpublic fora are constitutional if they are reasonable and

"not an effort to suppress expression merely because public officials oppose the speaker's view." *United States v. Kokinda*, 497 U.S. 720, 730 (1990).

In this case, the parties seem to agree that Rose Alley is a traditional public forum.[6] (Def.'s Br. at 10-12; Pl.'s Opp. at 12-13.)  Thus, Sergeant Camacho's actions must be content-neutral, narrowly tailored to serve a significant government interest, and leave open ample alternative channels for communication of information. *Ward*, 491 U.S. at 791.  "The principal inquiry in determining content neutrality ... is whether the government has adopted a regulation of speech because of disagreement with the message it conveys." *Id.*  The government actor's purpose is the controlling consideration; "[g]overnment regulation of expressive activity is content neutral so long as it is *justified* without reference to the content of the regulated speech." *Id.*  Here, Sergeant Camacho's actions were content-neutral.  No evidence has been presented demonstrating that Sergeant Camacho's actions were motivated by disagreement with the content of Snell's expressive

_____

[6] Although in general, "streets, sidewalks, and parks, are considered, without more, to be public forums," *United States v. Grace*, 461 U.S. 171, 177 (1983), it is conceivable that a small alley used only to travel from a parking lot to a business is more akin to the streets and sidewalks that courts have found to be nonpublic fora. *See, e.g.*, *Kokinda*, 497 U.S. at 727-30; *Paff*, 204 F.3d at 430-33; *Snell v. City of York*, 486 F. Supp. 2d 466, 471-72 (M.D. Pa. 2007); *Sabatini v. Reinstein*, C.A. No. 99-2393, 2000 WL 1052103 at *3 (E.D. Pa. July 21, 2000).  Nonetheless, because Sergeant Camacho's actions pass muster under the higher scrutiny applicable to traditional public fora, the Court will base its analysis on the parties' agreement that Rose Alley is a public forum.

activity.  Rather, Sergeant Camacho prohibited lingering in the alley out of concerns for safety and traffic flow.

As discussed above, Sergeant Camacho's instructions were narrowly tailored to serve these compelling interests.  Sergeant Camacho's significant safety and traffic concerns are clearly supported by the evidence in this case, and his directive, and subsequent enforcement of that directive, were designed to do what was necessary to address those concerns, but not more.  As also noted above, Sergeant Camacho's directive left open ample alternative channels for communication.  Snell and his fellow protestors were unrestricted in their ability to assemble and express their views on any of the public sidewalks surrounding the Planned Parenthood facility.  Because Sergeant Camacho's actions were content-neutral, narrowly tailored to serve a compelling interest, and left open ample channels of communication, Sergeant Camacho is entitled to summary judgment on Snell's speech and assembly claims.

### C.   Unlawful Arrest

Snell argues that Sergeant Camacho violated his Fourth Amendment rights because his arrest was made without probable cause.  "An arrest by a law enforcement officer without a warrant 'is reasonable under the Fourth Amendment where there is probable cause to believe that a criminal offense has been or is being

committed.'" *Wright v. City of Philadelphia*, 409 F.3d 595, 601 (3d Cir. 2005)

(quoting *Devenpeck v. Alford*, 543 U.S. 146, 152 (2004)).  "The determination that

probable cause exists for a warrantless arrest is fundamentally a factual analysis that

must be performed by the officers at the scene.  It is the function of the court to

determine whether the objective facts available to the officers at the time of arrest

were sufficient to justify a reasonable belief that an offense had been committed."

*Sharrar v. Felsing*, 128 F.3d 810, 818 (3d Cir. 1997).  "Probable cause does not

require the same type of specific evidence of each element of the offense as would

be needed to support a conviction.  Therefore, the evidentiary standard for

probable cause is significantly lower than the standard which is required for

conviction. ... In other words, the constitutional validity of the arrest does not

depend on whether the suspect actually committed any crime."  *Wright*, 409 F.3d

at 601.  "A court must look at the totality of the circumstances and use a common

sense approach to the issue of probable cause."  *Sharrar*, 128 F.3d at 818.

In this case, the totality of the circumstances indicates that Sergeant

Camacho's arrest of Snell was supported by probable cause.  Prior to his detail at

the Planned Parenthood facility, Sergeant Camacho consulted an assistant district

attorney to inform himself of the legal justification for a disorderly conduct arrest.

Sergeant Camacho advised Snell, as another officer and a judge had previously, not

19

to enter the alley, impede individuals attempting to access the Planned Parenthood facility, or to make physical contact with such individuals.  Sergeant Camacho observed Snell enter the alley and move into the path of individuals attempting to access the facility, and perceived that Snell made physical contact with these individuals.  Sergeant Camacho then gave Snell yet another warning.  When Sergeant Camacho observed Snell enter the alley again, he was justified in reasonably believing that Snell intended to cause public inconvenience, annoyance or harm by creating a hazardous or physically offensive condition by an act which serves no legitimate purpose.

That Snell was not found guilty does not mean that Sergeant Camacho acted without probable cause.  *Wright*, 409 F.3d at 601.  In fact, in dismissing the citation against Snell, District Justice Haskell stated that Snell was "right at the line" of committing disorderly conduct and made clear that Sergeant Camacho acted properly and should continue to enforce the law in the same manner.  (SUF, SIO ¶ 17; Tr. of Proceedings of Preliminary Hearing, Dec. 13, 2004 at 55-57.)  Snell's arrest was supported by probable cause, and therefore, Sergeant Camacho is entitled to summary judgment on Snell's unlawful arrest claim.

**D.    Excessive Force**

Snell also claims that Sergeant Camacho used excessive force during his

arrest by applying the handcuffs too tightly.  Snell concedes, however, that another officer, not Sergeant Camacho, applied the handcuffs too tightly.  (SUF, SIO ¶ 33; Snell Dep. at 45.)  "A defendant in a civil rights action must have personal involvement in the alleged wrongs."  *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988).  Here, Snell has admitted that Sergeant Camacho did not personally participate in the alleged excessive force, and therefore, Sergeant Camacho is entitled to summary judgment on this claim.

Snell suggests that the use of any force was excessive because the arrest was unsupported by probable cause.  (Pl.'s Opp. at 17-18.)  As discussed above, however, Sergeant Camacho's arrest was supported by probable cause.  Given the almost non-existent nature of the "force" used in arresting Snell, it is clear that the amount of force Sergeant Camacho used was reasonable under the circumstances, and therefore, cannot form the basis for an excessive force claim.  *Graham*, 490 U.S. at 396-97.  Further, "[i]t is well established that not every push or shove, even if it may later seem unnecessary in the peace of a judge's chamber, is constitutionally unreasonable."  *Id.* at 396.  The amount of force alleged by Snell does not rise to the level of a constitutional violation.

### E.  Qualified Immunity

Sergeant Camacho has raised the defense of qualified immunity.  Because, as

set forth above, Sergeant Camacho is entitled to summary judgment on Snell's claims that Sergeant Camacho violated his constitutional rights, the Court need not proceed with a qualified immunity analysis. *Saucier v. Katz*, 533 U.S. 194, 201 (2001) ("If no constitutional right would have been violated were the allegations established, there is no necessity for further inquiries concerning qualified immunity.")

### D.    Injunctive Relief and Punitive Damages

Snell seeks both injunctive relief and punitive damages.  Because Sergeant Camacho is entitled to summary judgment on Snell's claims, Snell is not entitled to an injunction.  *In re Diet Drugs Prod. Liab. Litig.*, 369 F.3d 293, 307 n.7 (3d Cir. 2004) ("Of primary importance, a party seeking an injunction must show that there is some legal transgression that an injunction would remedy.  Put differently, a party seeking a permanent injunction must succeed on the merits.").

Similarly, because Sergeant Camacho did not violate Snell's constitutional rights, his actions cannot constitute the basis for punitive damages.  *See Keenan v. City of Philadelphia*, 983 F.2d 459, 470 (3d Cir. 1992) (stating "the punitive damage remedy must be reserved, we think, for cases in which the defendant's conduct amounts to something *more* than a bare violation justifying compensatory damages or injunctive relief" (emphasis added)).

## IV.    CONCLUSION

For the foregoing reasons, Sergeant Camacho's motion for summary judgment shall be granted.  An appropriate order shall issue.